Oscar CORCHADO, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

Civ.A. No. 96–10799–WGY.

United States District Court, D. Massachusetts.

Dec. 20, 1996.

Raymond E. Gillespie, Cambridge, MA, for Plaintiff.

Lori J. Holik, United States Attorney's Office, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

The plaintiff, Oscar Corchado ("Corchado"), seeks judicial review of a final decision of the Secretary of Health and Human Services ("the Secretary") denying his application for disability benefits. Corchado argues that the Secretary's decision was legally erroneous and not supported by substantial evidence, and accordingly asks this Court either to remand his claim for reconsideration or to reverse the Secretary's decision and award him benefits. Corchado also seeks to recover his attorney's fees.

## I. FACTUAL BACKGROUND

Corchado is a thirty-nine year old man with a second-grade education. He cannot communicate in English but does speak Spanish. R.A. 45, 56, 110. Corchado has prior work experience as a farm laborer, meat cutter, and most recently, an assembly-line worker. R.A. 100, 110. On June 7, 1993, Corchado filed an application for disability insurance benefits and Supplemental Security Income payments. R.A. 58–61, 224–27.

The Social Security Administration denied Corchado's application both initially, R.A. 74–75, 231–32, and on reconsideration. R.A. 89–90, 237–348. Corchado filed a timely request for a hearing, which was held before an Administrative Law Judge on March 16, 1995. A Spanish interpreter was present at the hearing. R.A. 43. On June 19, 1995, the Administrative Law Judge denied Corchado's application for disability benefits, ruling that Corchado was not under a disability as defined in the Social Security Act. R.A. 25–36. The Appeals Council denied Corchado's request for review on January 29, 1996, rendering the decision of the Administrative Law Judge the final decision of the Secretary. R.A. 4–5.

Corchado claims that he became disabled on November 26, 1991, when he was struck in the lower back by a fork-lift while at work. R.A. 168. On January 7, 1992, Corchado went to the emergency room complaining of back and leg pain. R.A. 129–133. An x-ray of Corchado's spine revealed mild anterior spurring and spinal bifida occulta at the S1 level, but no acute fracture. R.A. 133. Doctors prescribed Motrin 800 mg. three times daily, bed rest, and ice. R.A. 1323.

Since that initial emergency room visit, Corchado has sought treatment for chronic lower back pain at a variety of institutions. In February, 1992, Corchado complained to doctors that he suffered from "near constant" lower back pain and bilateral leg pain, and that the pain was almost equally as bad sitting down as standing, requiring him constantly to shift positions. He also stated that the pain was even worse at night when lying down. R.A. 135–36. At an examination in January of 1994, Corchado stated that the

pain had worsened on the right side of his back and that he suffered from bilateral leg numbness. R.A. 166. In September of 1994, Corchado told two neuropsychologists that "his pain has increased over the years, and that it is now at a level of a 10 or a 11 on a scale from 1 to 10." R.A. 14.

An MRI of Corchado's spine performed in February of 1992 revealed a disc bulge located lateral to and just below the L4–L5 level, as well as a small mass believed to be a tumor located adjacent to L4. R.A. 135–36. One month later, a CT scan and myelogram indicated a herniated disc on the left of L4–L5 and a bilateral spondylolysis on L–4. R.A. 164. The CT scan also indicated that the mass previously located at L4 had migrated to S1. R.A. 163. The most recent MRI contained in the record, performed on June 15, 1994, showed a conjoined left S1–S2 nerve root and a disc bulge at L4–L5 without significant neurological compromise. R.A. 214.

The doctors who have performed physical examinations on Corchado have reported mixed results. All of them found Corchado's range of motion significantly restricted [1] but, in some instances, doctors could not conduct adequate testing because of Corchado's complaints that it would exacerbate his pain. R.A. 192. Pin prick examinations have substantiated Corchado's reports of bilateral numbness, R.A. 214, with one test indicating total anesthesia up to the C6 level. R.A. 184–85. An examiner at Boston City Hospital, however, reported that Corchado could feel the pin pricks clearly but pretended that he could not. R.A. 187. An examination by Dr. Sukiennik in September of 1994 revealed that Corchado's gait, sensation, and reflexes were normal, and that his motor exam was normal and limited only by complaints of pain. R.A. 190. Both Dr. Shapiro and Dr. Geiger expressed skepticism about some of Corchado's allegations of pain. Dr. Shapiro noted that Corchado exhibited some responses which did not correlate as between the subjective symptoms and the objective signs, R.A. 174, while Dr. Geiger stated that he felt Corchado's exam was somewhat "embellished." R.A. 184–85. Dr. Sukiennik commented that although Corchado does suffer from chronic back pain, he also appears to have "major psychiatric issues." [2] R.A. 190.

At the time of his hearing, Corchado's lawyer stated that Corchado was currently taking the medications Ibuprofen, Percocet, Elavil, and Toradol. R.A. 54. Corchado told two neuropsychologists in March of 1994 that he was taking Motrin and Percocet and that, although these medications were helpful initially, they had lost all effectiveness. R.A. 14.[3] Corchado underwent physical therapy in May through August of 1992, and in March and April of 1994. R.A. 138–151, 201–208. Corchado's first physical therapist, Maureen C. Crosby, concluded that the therapy had achieved only one of the short-term goals set at the therapy's onset, and that Corchado continued to experience significant pain.[4] Corchado told the two neuropsychologists that he did not find this physical therapy helpful. R.A. 14.

## II. DISCUSSION

This Court must affirm the Secretary's decision if the findings of the Administrative Law Judge are supported by substantial evidence. *Da Rosa v. Secretary of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir.1986) (per curiam); *Lizotte v. Secretary of Health & Human Servs.*, 654 F.2d 127, 128 (1st Cir.1981). Substantial evidence requires "more than a mere scintilla. It means such

1. For example, Dr. Cohen and Dr. Roth described Corchado's range of motion as "markedly limited," and a straight leg raising test caused back pain at 30 degrees bilaterally. R.A. 166. Dr. Shapiro reported that backward bending on both the right and left sides was almost totally restricted. R.A. 172.

2. Corchado was subsequently examined by a team of two neuropsychologists. They stated that Corchado "had some unusual aspects to his presentation," and recommended that he be ex-

amined by a psychiatrist who is fluent in Spanish. R.A. 14–15.

3. Corchado also reported that he often took more than the prescribed dosages of these medications. R.A. 14.

4. Crosby reported that although Corchado diligently attended his therapy sessions, he did not always bring an interpreter, making full assessment difficult. R.A. 149.

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 [1938] ). Furthermore, the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the Secretary and not the courts to decide. *Perales,* 402 U.S. at 399, 91 S.Ct. at 1426; *Rodriguez v. Secretary of Health & Human Servs.,* 647 F.2d 218, 222 (1st Cir.1981). When evidence has not been evaluated because of an error of law, however, the Secretary's decision must be set aside. *Da Rosa,* 803 F.2d at 26.

■ The Administrative Law Judge found that Corchado had not engaged in any substantial gainful activity since November 26, 1991,[5] and that Corchado suffered from severe chronic lower back pain with some radiation to his legs, leaving him unable to return to his past relevant work. R.A. 35. "After reviewing [Corchado's] testimony and medical evidence," R.A. 34, however, the Administrative Law Judge concluded that Corchado's condition does not prevent him from performing the full range of sedentary work. R.A. 34. The Administrative Law Judge then applied the Medical–Vocational Guidelines (the "Grid"), set forth in 20 C.F.R. Part 404, Subpt. P, App. 2, and determined that in light of Corchado's residual functional capacity, age, education, and work experience, his condition is "not so severe as to be 'totally disabling.'" R.A. 34, 35.[6] This Court must now reverse. The Secretary's decision is not supported by substantial evidence because the Administrative Law Judge failed to conduct a proper inquiry into Corchado's subjective allegations of pain.

After reviewing the medical evidence in this case, the Administrative Law Judge con-cluded that Corchado suffered from several impairments—L4–5 disc herniation, L4 spondylolysis, spinal bifida occulta S1, and mild spurring of the lumbar bodies—any one of which could reasonably be expected to produce back pain. R.A. 35. When medical signs or laboratory findings indicate that the claimant has "medically determinable impairment(s) that could reasonably be expected to produce [his] symptoms, such as pain, [the adjudicator] must then evaluate the intensity and persistence of [the] symptoms" in order to determine how they limit the claimant's ability to work." 20 C.F.R. § 404.1529(c). In making this evaluation, the adjudicator must consider all of the available evidence, including the objective medical evidence and the statements of the claimant. *Id.*

■ Statements by a claimant concerning the intensity of his pain, if deemed credible by the Administrative Law Judge, may sometimes "permit a finding of disability [under the Social Security Act] where the medical findings alone would not." *Avery v. Secretary of Health & Human Servs.,* 797 F.2d 19, 21 (1st Cir.1986). As a result, in *Avery,* the First Circuit held that "when there is a claim of pain not supported by objective findings, the adjudicator is to 'obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects [on] the claimant ...'" *Id.* at 23 (quoting the Secretary's Program Operations Manual System dated August 1, 1985). The *Avery* court further held that in evaluating the claimant's subjective symptoms, the Administrative Law Judge must consider the following factors:

1. the nature, location, onset, duration, frequency, radiation, and intensity of any pain;

2. precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

---

5. Corchado apparently told his physical therapist, Maureen Crosby, that he injured his back in November of 1991, and aggravated the condition when he fell on the job in January of 1992. R.A. 138. On his disability application, however, Corchado stated that he has been unable to work since November 26, 1991. R.A. 58. The Administrative Law Judge did not ask Corchado about this conflicting evidence, and instead simply concluded that Corchado had not engaged in any substantial gainful activity since November 26, 1991. R.A. 35.

6. The Administrative Law Judge's analysis follows the five-step sequential evaluation process set forth in *Goodermote v. Secretary of Health & Human Serv.,* 690 F.2d 5, 6 (1st Cir.1982); *see also* 20 C.F.R. § 404.1520.

3. type, dosage, effectiveness, and adverse side effects of any pain medication;
4. treatment, other than medication, for pain relief;
5. functional restrictions; and
6. the claimant's daily activities.

*Cordero v. Chater*, 926 F.Supp. 267, 272–73 (D.Mass.1996) (Gorton, J.) (citing *Avery*, 797 F.2d at 29); *see also Frustaglia v. Secretary of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir.1987) ("[t]he ALJ thoroughly questioned the claimant regarding his daily activities, functional restrictions, medication, prior work record, and frequency and duration of the pain, in conformity with the guidelines set out in *Avery* regarding the evaluation of subjective symptoms") (internal citation omitted).

In this case, the Administrative Law Judge purported to evaluate the medical evidence and Corchado's testimony in accordance with the requirements of *Avery*, R.A. 34, and concluded that Corchado's complaints regarding the severity of his back pain were not supported by sufficient medical evidence. R.A. 35.

After reviewing the entire record, however, this Court holds that the Administrative Law Judge failed to conduct a proper *Avery* inquiry into Corchado's subjective complaints of pain. At the administrative hearing, the Administrative Law Judge did not ask Corchado a single question about how his back pain impacts his daily activities, what types of activities or movements precipitate or aggravate the pain, or even the duration and intensity of the pain.[7] While the Administrative Law Judge did briefly inquire into Corchado's treatment history and Corchado's attorney replied that Corchado recently had completed a course of physical therapy and was currently on the medications Ibuprofen, Percocet, Elavil, and Toradol, R.A. 54, 56, the Administrative Law Judge neglected to ask Corchado, as *Avery* requires, whether any of these treatments had either alleviated his pain or caused any adverse side effects.

In her ruling, the Administrative Law Judge stated that Corchado's "complaints of pain ... [are] not credible to the extent alleged." R.A. 35. Credibility determinations made by an Administrative Law Judge generally are entitled to deference by this Court. *Da Rosa*, 803 F.2d at 26. In this case, however, the Administrative Law Judge had no basis for discrediting Corchado because she did not afford him the opportunity to testify as to the extent of his pain.

Because the Administrative Law Judge did not adequately develop the record as to Corchado's subjective complaints of disabling pain, her conclusion that Corchado has the residual functional capacity to perform sedentary work is not supported by substantial evidence. This Court must therefore vacate the Administrative Law Judge's decision and remand to the Secretary for proceedings consistent with the guidelines set forth in *Avery*. After making the proper inquiries, the Administrative Law Judge is still free to find that Corchado's allegations concerning the extent of his pain are not credible, provided that the Administrative Law Judge makes "specific findings as to the relevant evidence [s]he considered in determining to disbelieve the [claimant]." *Da Rosa*, 803 F.2d at 26.

The Court also cautions that the use of the Medical–Vocational Guidelines may have been inappropriate in this case because there was evidence in the record that some of Corchado's pain was non-exertional. *See id.* at 26. Corchado told Dr. Roth and Dr. Co-

---

7. In fact, the Administrative Law Judge spent more time on collateral matters—such as Corchado's current address, R.A. 45–47, the whereabouts of Corchado's children, R.A. 48, the proper pronunciation of the name of one of Corchado's doctors, R.A. 53–54, and whether Corchado's attorney was related to another attorney with the same last name, R.A. 43–44—than on the subject of Corchado's back pain. The following excerpt from the hearing transcript contains the only question that the Administrative Law Judge posed to Corchado concerning his symptoms:

ALJ: All right.... So what's bothering you now?
CLMT: I have pain in my back and my legs.
ALJ: Okay.
CLMT: I shoot pain in my neck.
ALJ: Okay....

R.A. 55. The Administrative Law Judge then commented that she needed to get an up-to-date report from Corchado's current doctor, and did not ask Corchado another question for the remainder of the hearing.

hen that his pain was almost as bad sitting down as standing up. R.A. 135–36. Since "[s]edentary jobs [ ] generally require that the worker have the capacity to remain seated most of the day," *Da Rosa*, 803 F.2d at 26 (citing *Thomas v. Secretary of Health & Human Servs.*, 659 F.2d 8, 10–11 [1st Cir. 1981] ), when the Administrative Law Judge further develops the record on this issue, she must determine whether Corchado's condition prevents him from sitting for long periods of time without frequent intervals of rest. *Da Rosa*, 803 F.2d at 26. If this turns out to be the case, the Administrative Law Judge "must engage in an individualized analysis, using the rules of the Grid solely as guidance, and perhaps consider the testimony of a vocational expert before reaching a final determination." *Id.* at 26–27.

### III. Costs and Attorneys' Fees

 Since Corchado is here proceeding in forma pauperis, there exists no issue concerning court costs. Corchado does seek, however, to recover his attorney's fees pursuant to the Equal Access to Justice Act (the "Act"). *See* 28 U.S.C. § 2412(d)(1)(A).[8] In *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), the Supreme Court held that an administrative decision does not constitute a "final judgment" for the purposes of awarding attorneys' fees under the Act. *Id.* at 95, 111 S.Ct. at 2161–62. A judgment of a district court upon review of a decision of the Secretary pursuant to 42 U.S.C. § 405(g), by contrast, "fits squarely within the term 'final judgment' as used in section 2412(d)...." *Shalala v. Schaefer*, 509 U.S. 292, 298, 113 S.Ct. 2625, 2629, 125 L.Ed.2d 239 (1993). Accordingly, the remand by this Court represents a "final judgment" under the Act. *Durant v. Chater*, 906 F.Supp. 706, 713 (D.Mass.1995). Corchado may now file an application for attorneys' fees under the Act within 30 days of this order. *See id.* Corchado may not recover

any fees incurred during administrative proceedings held subsequent to the remand, however, as this Court no longer retains jurisdiction over the case. *See id.* (citing *Schaefer*, 509 U.S. at 299–300, 113 S.Ct. at 2630–31).[9]

### IV. CONCLUSION

For the foregoing reasons, the decision of the Administrative Law Judge is REVERSED and the case is REMANDED for further proceedings consistent with this opinion. At this point, the court denies attorneys' fees without prejudice to an application within thirty days of this order.

---

**8.** The Equal Access to Justice Act requires that a court "award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

**9.** A prevailing party in a Court action involving the Social Security Administration may also petition the Court for attorneys' fees pursuant to 42 U.S.C. § 406(b). This Court, however, will not award attorneys' fees pursuant to this provision in the context of a remand. *See Durant*, 906 F.Supp. at 713.